IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Raab, | : | |
| Plaintiff | : | Civil Action 2:10-cv-186 |
| v. | : | Judge Economus |
| Unum Group, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

**ORDER**

This matter is before the Court pursuant to Plaintiff's motion to compel a Fed. R. Civ. P. 30(b)(6) deposition (Doc. 62.)

On January 7, Plaintiff served a notice of deposition upon Defendant Unum Group. (Doc. 62-1.) This notice required the testimony of a representative of Unum pursuant to Fed. R. Civ. P. 30(b)(6) concerning five topics: (1) any changes in Unum's claim handling policies and procedures resulting from the Multistate Conduct Examination Settlement ("RSA"), California Settlement Agreement ("CSA"), or Unum Group Actuarial Analysis of the Northwind Individual Disability Block; (2) claims training, policy, and procedures on or after June 1999; (3) any changes in Unum's compensation programs resulting from the RSA or CSA; (4) all actions taken by Unum to ensure compliance with Ohio's Unfair Claims Practices Act; and (5) the business relationship between Unum and any other defendant with

respect to claims handling procedures.[1] (*Id.* at 3.)

Unum apparently agreed at first to produce a representative to testify about topics 1-4, so long as topic 5 was withdrawn.[2] However, Defendants later sent Plaintiff comprehensive responses to the notice of deposition. They objected to Topic 1 on grounds that the CSA was irrelevant because it applied only to California policies, and that the Northwind agreement only involved a reinsurance treaty, not claims management operations. Defendants objected to Topics 2 and 4 to the extent that information was sought from before 2003. Finally, they objected to Topic 3 on grounds that the CSA was irrelevant, and that they had already affirmatively stated that there had been no changes to Defendants' compensation programs as a result of the RSA, rendering a deposition on the question superfluous. (Doc. 62-3; Doc. 65-1.) Plaintiff now requests that the Court order Defendants to attend the deposition and testify on these topics. The Court will address them separately.

Topic 1. The Court previously found, in its order of April 8, 2011, that information concerning Unum's implementation of the RSA was relevant to the question of claims handling practices. (Doc. 48 at 2.) Defendants do not object to producing a witness to testify on this subject. (Doc. 65 at 4; Doc. 62-3 at 3.)

---

[1] The notice of deposition referred only to Defendant Unum Group as the subject of the Rule 30(b)(6) examination, although the parties generally refer to the respondent Defendants in the plural.

[2] The parties do not appear to dispute that Topic 5 is no longer at issue.

However, they argue that "the CSA has no bearing on any unit handling Plaintiff's claims because the two policies issued to Plaintiff are not California policies." (Doc. 65 at 4.) Defendants cite another court's explanation that the CSA is simply a parallel to the RSA applying only to California claimants. *Torres v. Unum Life Ins. Co. of Am.*, 2009 WL 69358 at *6 (N.D. Cal. 2009). Plaintiff does not effectively rebut Defendants' argument that the CSA is irrelevant; he states that portions of the RSA are incorporated by reference into the CSA, and that Unum often refers to them both collectively as "regulatory settlement agreements". However, his assertion that the CSA is "equally applicable" to Plaintiff's non-California claim determination simply because "any broad changes made to claims handling would necessarily have needed to comply with the provisions of the CSA as well as the RSA" is not persuasive. (Doc. 62 at 4-5.) The Court does not find the CSA, a regulatory settlement not applicable to Plaintiff's policy, relevant to Plaintiff's claims in this action.

Although the parties have supplied little information concerning the nature of the "Unum Group Actuarial Analysis of the Northwind Individual Disability Block", Defendants objected to testifying about it on grounds that "it is Defendants' understanding that the Northwind agreement only involved a reinsurance agreement, and did not affect Defendants' claims management operations". (Doc. 62-3 at 2.) "This statement," Plaintiff argues, "drastically underestimates the importance of reinsurance arrangements and their effect on operations." (Doc. 62 at 5.) He quotes the following statement from Unum's president in a press release:

> The Northwind transaction is another important step in our ongoing efforts, which began in 2004, to improve the returns associated with our Individual Income Protection – Closed Block business.  **This securitization creates a more efficient, market-validated capitalization for this business and creates capital which can be directed to other uses.**  The deployment of excess capital from on-going operations and this transaction will benefit our policyholders, shareholders, and creditors.

(Doc. 62 at 5, emphasis in original.)  Plaintiff argues:

> The sentence in bold says that Unum created capital from the Closed Block.  This is unusual to say the least.  Apparently through financial engineering Unum turned liabilities into capital.  Plaintiff seeks to discover how Unum was able to take money set-aside to pay liabilities (claims) into capital for use in Unum's operations rather than to pay claims, such as the Plaintiff's.

(*Id.*)

Plaintiff brought this suit alleging that Defendants had breached their insurance contract with him by refusing to pay him total disability.  (Doc. 16 at 3-4.)  The Court has previously found relevant questions of whether Defendants engaged in claims-handling practices which encouraged the denial of claims in bad faith and/or linked employee compensation to the denial of claims.  Plaintiff is not, however, conducting an audit or regulatory investigation of Unum Group and its capital management strategy.  He has offered no plausible basis for finding that the reinsurance arrangement between Unum Group and Northwind Holdings, LLC is relevant to his claims.

**Topics 2 and 4**.  Defendants' objections to these topics were based upon a dispute as to the time period relevant to Plaintiff's claims.  In its order of June 6, 2011, the Court found that discovery concerning claims determinations in the years

1999, 2001, 2003, 2005, and 2009 was relevant, as these comprised years in which Defendants actively reviewed Plaintiff's claims and made either favorable or unfavorable determinations. (Doc. 57 at 2-3.) Plaintiff in the motion at bar states that his notice of deposition likewise limits Topics 2 and 4 to 1999, 2001, 2003, 2005, and 2009. However, "Defendants maintain that the cited 'active review' years are relevant only for claim determinations generally, as opposed to adverse determinations specifically. As such, the years 1999 and 2001 – when Defendants did not make adverse decisions regarding Plaintiff's benefits – are not relevant for purposes of this topic." (Doc. 65 at 8.) Defendants state that they are willing to produce a deponent for the years 2003, 2005, and 2009.

Plaintiff, in Topics 2 and 4, seeks information on "[c]laims training, policy and procedures in administration and adjudication of individual disability claims..." and "[a]ll actions... used by Defendant to ensure compliance with Ohio's Unfair Claims Practices Act". The Court has already found that "[i]nformation from years in which Plaintiff received favorable claim or coverage determinations are relevant to compare with years in which he did not, to determine whether salary and bonus incentives might have affected the outcome." (Doc. 57 at 3.) Accordingly, the years 1999 and 2001 are relevant to Plaintiff's claims, and Defendants must provide deposition testimony concerning these years as well.

<u>Topic 3</u>. This topic seeks, as noted above, information concerning any changes to Defendants' bonus or other incentive compensation programs resulting from the CSA or RSA. Defendants have already represented that no responsive

5

information exists, because "there were no changes to Defendants' variable Compensation & Bonus Incentive Programs as a result of the RSA".[3] (Doc. 65-1 at 4.) Plaintiff states that, in this case, preparing a witness for deposition on this topic should be easy. However, its "burden or expense" would also outweigh "its likely benefit". Fed. R. Civ. P. 26(b)(2)(C)(iii). Little would be accomplished by asking a Rule 30(b)(6) representative to again give the same response.

Plaintiff suggests also that Unum has made inconsistent statements on this matter in the past, as one corporate officer stated in a June 8, 2010 deposition that, under the RSA, compensation is "not appropriately based on denials of claims or targets". (May 14, 2010 Deposition of Laura Kilmartin in *Kelly v. Provident Life and Accident Ins. Co., et al.*, District of Vermont Case No. 1:09-cv-70, Doc. 62-5 at 112.) However, "[i]f Unum is saying that they have, in fact, made no changes as a result of the RSA, this would lead to the conclusion that bonuses were being based upon denials of claims during the period in which Plaintiff's claim determination was made." (Doc. 62 at 8.) Plaintiff's conclusion is illogical. Ms. Kilmartin's testimony, and Unum's statements now, would lead to the conclusion that, if implementation of the RSA resulted in no change in Unum incentive compensation policy, and basing bonuses upon denials of claims was barred by the RSA, then Unum did not base bonuses upon denials of claims before the RSA either. In any case, Plaintiff has received the information he asked for – that Defendants' position

---

[3] As noted above, the CSA is not relevant to Plaintiff's claims.

on post-RSA changes in compensation policies is that none occurred.  A deposition to further reiterate this conclusion would appear to be unproductive and burdensome.

**Conclusions**.  Plaintiff's motion to compel (Doc. 62) is **GRANTED** to the extent that Defendant Unum, when the deposition of its Fed. R. Civ. P. 30(b)(6) representative is taken, is **ORDERED** to provide testimony concerning Topics 2 and 4 of Plaintiff's Notice of Deposition covering the years 1999, 2001, 2003, 2005, and 2009.  Plaintiff's motion is otherwise **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P. and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge.  The motion must specifically designate the order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/Mark R. Abel  
United States Magistrate Judge